USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/23/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILLIP MCKELVEY,

      Petitioner,

  -against-

SUPT. MARK BRADT,

      Respondent.

13cv3527 (CM) (DF)

**REPORT AND RECOMMENDATION**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____

**TO THE HONORABLE COLLEEN MCMAHON, U.S.D.J.:**

  *Pro se* petitioner Phillip McKelvey ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, following his state conviction, upon a jury verdict, of two counts of Rape in the First Degree, in violation of New York State Penal Law § 130.35(1); one count of Attempted Rape in the First Degree, in violation of New York State Penal Law §§ 110.05(1), 130.35(1); four counts of Criminal Sexual Act in the First Degree, in violation of New York State Penal Law § 130.50(1); and three counts of Sexual Abuse in the First Degree, in violation of New York State Penal Law § 130.65(1). For these crimes, Petitioner was sentenced to an indeterminate term of 75 years to life imprisonment. Petitioner is presently incarcerated at Attica Correctional Facility in Attica, New York.

  In his petition for a writ of habeas corpus (Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus by a Person in State Custody, dated May 14, 2013 ("Pet." or "Petition") (Dkt. 1)), Petitioner alleges that his custody is unlawful due to prosecutorial misconduct and other improprieties in his grand jury proceeding, and that his constitutional rights were violated when he was arrested without probable cause, denied his right to confront an adverse witness, denied due process of law, and denied the effective assistance of counsel. Respondent Mark Bradt ("Respondent"), Superintendent of Attica Correctional Facility, argues that Petitioner's

various claims should be dismissed as procedurally barred, non-cognizable, and/or without merit. For the reasons set forth below, I recommend that the Petition be dismissed in its entirety.

## BACKGROUND

### A.    Factual Background

Based on the evidence presented by the prosecution at Petitioner's trial, as summarized below, Petitioner sexually assaulted three different women, who, for privacy purposes, are referred to herein by their initials.[1]

### 1.    Attack On W.B.

At about 10:30 p.m. on July 19, 2005, after having spent the day smoking crack, W.B. left her friend's apartment on West 144th Street between Seventh and Eighth Avenues.  (*See* Transcript of Trial, conducted Oct. 29, 2007, to Nov. 1, 2007 ("Trial Tr."), at 67-68, 102-03.)  As W.B. walked north on Seventh Avenue, Petitioner approached her and asked if she "want[ed] to make some extra money."  (*Id*., at 70-71, 104.)  W.B. said "no" and continued to walk past Petitioner. (*See id*., at 70-71, 104-05.)  Petitioner then responded, "You're going to anyway," and grabbed W.B. around the neck, saying "don't even think about it or I will kick your ass."  (*See id*., 70-72, 104-05.)  Petitioner was six feet, two inches tall and weighed 210 pounds.  (*See id*., at 214.)  W.B. was five feet, three inches tall and weighed 103 pounds.  (*See id*., at 72-73.)

Petitioner then led W.B. across Seventh Avenue, passing two police officers along the way.  (*See id*., at 71-73, 105.)  The police officers did not notice W.B., despite her efforts to make eye contact with them.  (*See id*., at 71, 106.)  After passing the officers, Petitioner put W.B. in a headlock and warned her against trying to escape, threatening to "slap the shit out of [her]"

---

[1] Respondent's submissions to this Court were made under seal, given that they revealed the identity of rape victims.  For the same reason, this Court has directed that Plaintiff's "Notice of Motion" and attachment thereto (construed by this Court as his reply submission) (Dkt. 20) be placed under seal.

if she did not comply with his demands.  (*Id.*, at 73, 107.)  Petitioner then dragged W.B. to a church courtyard, verbally threatened W.B. again, and then slapped her.  (*See id.*, at 73-74.)

Petitioner directed W.B. down a staircase to a sunken area within the courtyard, where another man was waiting, and told her to kneel down and remove her pants and shoes.  (*See id.*, at 74-75, 108, 130.)  Fearing for her safety, W.B. complied.  (*See id.*)  Petitioner then anally, vaginally, and orally raped her, taking turns with his unidentified accomplice.  (*See id.*, at 76-80, 111-12.)  W.B. tried to escape up the staircase, but one of the men pulled her back down by her legs, and Petitioner threatened to "fuck [her] up if [she] tried it again."  (*Id.*, at 81, 130-32.)  Petitioner and the other man resumed their attack and, after about 20 or 25 minutes, Petitioner ejaculated in W.B.'s mouth.  (*See id.*, at 81-82, 113-14.)  The two men then fled the courtyard, ordering W.B. to stay there for "a few minutes."  (*Id.*, at 81-82.)

Still holding Petitioner's semen in her mouth, W.B. walked directly to the 32nd Police Precinct.  (*See id.*, at 82-83, 85-86, 114.)  She told an officer that she had been raped and that she still had one of her attacker's semen in her mouth and underwear.  (*See id.*, at 85-86, 114-16.)  W.B. spat some of the semen into a plastic bag, and was told by the police to continue to hold the remaining semen in her mouth while Police Officers Rashied Richardson and Richard Flaherty took her to Harlem Hospital.  (*See id.*, at 86, 114, 253-55, 262-64, 344-45.)  W.B. was eventually examined by Dr. Joseph Bobrow, the obstetrician and gynecologist on duty at the time.  (*See id.*, at 329-32.)  Bobrow performed an internal and external forensic examination, including with the use of a "rape kit."  (*Id.*, at 86, 121, 330-35.)  Bobrow observed that W.B. had "minor abrasions on her knees" that were consistent with protracted kneeling on a rough surface, but detected no injuries to her vagina or anus that were consistent with forcible intercourse.  (*See id.*, at 333-35, 340.)  Bobrow testified at trial, though, that it was "not uncommon for rape victims to not have

any trauma to the genital area." (*Id.*, at 339.)  When asked at trial if she recognized the man who raped her, W.B. responded, "I'm not 100 percent sure, but [Petitioner] looks like [the attacker]." (*Id.*, at 83.)

### 2.    Attack on M.L.

Sometime between 11:00 p.m. and midnight on July 26, 2005, M.L. was sitting on a bus-stop bench in front of Harlem Hospital, when she and Petitioner began to converse.  (*See id.*, at 174-75, 194-95, 197.)  Eventually, they walked to a store where Petitioner bought M.L. a soda. (*See id.*, at 175, 196.)  Petitioner then offered to buy M.L. something to eat at a nearby restaurant.  (*See id.*, at 176, 197.)  M.L. agreed, and they walked to the restaurant, only to discover it was closed.  (*See id.*, at 177, 197.)  Claiming that he had to stop at home, Petitioner then led M.L. to the same sunken area within the church courtyard where, one week earlier, he had raped W.B.  (*See id.*, at 177, 367.)  As they reached the bottom of the staircase, Petitioner grabbed M.L.'s hair, pressed a sharp object against her neck, and ordered her to remove her clothes.  (*See id.*, at 177-78, 201-03.)  M.L. told Petitioner that she would do whatever he wanted, and pleaded with him not to hurt her.  (*See id.*, at 178.)

Petitioner ordered M.L. to perform oral sex on him; in response, M.L. "whimper[ed]," and Petitioner struck her on the head.  (*See id.*, at 178-79.)  After orally raping her, Petitioner threw a condom at M.L. and ordered her to put it on him.  (*See id.*, at 179, 198.)  M.L. complied and Petitioner proceeded to rape her vaginally.  (*See id.*, at 179-80.)  When he finished raping M.L., Petitioner took off the condom and threw it on the ground.  (*See id.*, at 184, 198.)  He then pushed M.L. to the ground, emptied the contents of her pocketbook onto the ground, and told her to count to 50 or 100 before leaving the courtyard.  (*See id.*, at 180.)  Eventually, M.L. left and headed to Harlem Hospital.  (*See id.*, at 180-81, 198.)

M.L. arrived at the hospital and reported that she had been raped.  (*See id.*, at 181.)

Shortly thereafter, Police Officers Richard Flaherty and Carlos Matos met M.L. at Harlem

Hospital.  (*See id.*, at 181, 258, 267-68.)  M.L. was eventually interviewed by Dr. Jenny Castillo,

who was on duty in the emergency room.  (*See id.*, at 150-51.)  M.L. told Castillo that she had

been raped and complained of pain in her head and knees.  (*See id.*, at 152.)  Castillo performed

an internal examination, including with the use of a rape kit, and found no signs of forcible

intercourse.  (*See id.*, at 155-59, 181, 199.)  At trial, Castillo explained that many rape victims

show no signs of physical trauma, particularly if a lubricated condom is used.  (*See id.*, at 145-

50, 156-58, 162.)

Not long after M.L. had been examined, Detective David Rivera recovered a used

condom and an open condom wrapper from the church courtyard.  (*See id.*, at 41-43.)  On

July 28, 2005, Irene Wong, a criminalist with the New York City Office of the Chief Medical

Examiner, tested the condom and found DNA from sperm cells that matched the DNA in the

semen that had been recovered from W.B.'s mouth.  (*See id.*, at 422-23.)  In the following days,

M.L. worked with Detective Julia Collins to identify the man who raped her, but M.L. did not

recognize her assailant in any of the photographs of suspects that she viewed.  (*See id.*, at

182-83, 368.)  At trial, though, M.L. identified Petitioner as the one who had raped her on July

26, 2005.  (*See id.*, at 183.)

### 3.    Attack on S.P.

At around midnight on or about May 26, 2006, S.P. left her friend's apartment on

Seventh Avenue between 141st and 142nd Streets, where she and the friend had been smoking

crack together.  (*See id.*, at 287-89, 397-400.)  Upon leaving the apartment, S.P. went to buy a

soda at a nearby store.  (*See id*., at 289, 317.)  On her way back to the apartment, S.P. was struck

in the mouth by Petitioner, who was dressed in a black army fatigue jacket and a black hat.  (*See id.*, at 289-91, 293, 317.)  Petitioner put an orange box cutter to S.P.'s neck and said "shut the fuck up, bitch . . . just walk."  (*Id.*, at 290-91, 323-25.)

Petitioner forced S.P. to the back of a schoolyard, made her kneel in dog feces, put on a condom, and forced her to perform oral sex on him.  (*See id.*, at 291, 297, 315, 323.)  Petitioner then told S.P. to turn around and pull her pants down.  (*Id.*, at 291.)  Before S.P. did so, however, Petitioner heard "some guys" enter the area, told S.P. to "sit there [and] count to 50," and then fled.  (*Id.*, at 292-94.)  S.P. walked back to her friend's apartment and told him what had happened.  (*See id.*, at 297, 311, 401, 403.)  Accompanied by her friend, S.P. then went to look for a police officer.  (*See id.*, at 297.)

S.P. found a police van, told the officers inside that she had just been sexually assaulted, and described the assailant.  (*See id.*, at 297, 311-14, 401.)  After driving off for a minute, the officers returned and said that they "didn't see" S.P.'s attacker; the officers did not write a formal incident report.  (*See id.*, at 297, 313-14, 401.)  At trial, S.P. identified Petitioner as the man who had assaulted her and forced her to perform oral sex on him.  (*See id.*, at 291.)

> B. **Procedural History**

>> 1. **Petitioner's Arrest**

On July 10, 2006, S.P. was shopping near 125th Street and Fifth Avenue when she walked past Petitioner.  (*See id.*, at 299-300.)  S.P. ran to a police car, where she found Officer Anthony McNeil and his partner, Officer Park.  (*See id.*, at 211-12, 315.)  Pointing at Petitioner, S.P. told the officers, "[that] is the guy that raped me."  (*See id.*, at 212, 300.)  At that time, S.P. told McNeil that the attack had occurred about two weeks earlier, although it had actually been six weeks since the assault.  (*See id.*, at 233-35, 300.)  McNeil then approached Petitioner and

asked if he knew S.P., and Petitioner replied that "[h]e had never seen her in his entire life." (*See id.*, at 213.)

McNeil took Petitioner into custody and brought him to the precinct, where Detective Collins interviewed him and, with Petitioner's consent, obtained swabs of his DNA.  (*See id.*, at 213, 369-70, 378-79.)  Criminalist Wong then tested the DNA and found that it matched the DNA in the semen from W.B.'s mouth and the condom recovered after the attack on M.L. (*See id.*, at 423-24.)  On July 11, 2006, Officer McNeil executed a search warrant at Petitioner's apartment, recovering an orange box cutter and a "black army field jacket," among other items. (*See id.*, at 219-22, 225-26.)

### 2.     Pretrial Proceedings

Shortly after Petitioner's July 10, 2006 arrest, the prosecution filed a Felony Complaint charging Petitioner with several crimes arising from the sexual assaults of W.B., M.L., and S.P. (*See* Answer in Opposition to the Petition for a Writ of Habeas Corpus, dated Aug. 27, 2013 ("Answer") (Dkt. 9), Ex. G,[2] at 38.)  In that Felony Complaint, the prosecution stated that Petitioner had attacked S.P. on June 23, 2006.  (*Id.*)

On August 11, 2006, by New York County Indictment Number 4080/06, a grand jury charged Petitioner with two counts of Rape in the First Degree; one count of Attempted Rape in the First Degree; four counts of Criminal Sexual Act in the First Degree; three counts of Sexual Abuse in the First Degree; and one count of Kidnapping in the Second Degree.  (Answer, Ex. B, at 3.)  The Indictment, based on the information presented to the grand jury, specified that Petitioner's criminal conduct toward S.P. had occurred on May 26, 2006, and not on June 23,

---

[2] While Respondent's answer to the Petition is available on the public docket, the Exhibits to that document were filed under seal.

2006, as had been charged in the original Felony Complaint.  (*See* Transcript of Pretrial

Proceedings, conducted Apr. 24, 2007 ("4/24/07 Tr."), at 3-4.)

      Petitioner moved to suppress the results of the DNA swab test, as well as certain

statements he made to the police, and, on April 23 and 24, 2007, a pretrial

*Mapp*/*Dunaway*/*Huntley* hearing was held before the Honorable Arlene Goldberg, J.S.C., in the

Supreme Court of New York, New York County.[3]  (*See* Transcript of Pretrial Proceedings,

conducted Apr. 23-24, 2007 ("4/23/07 Tr."), at 1-110; 4/24/07 Tr., at 1-40.)  At the outset of that

hearing, Petitioner's counsel raised the issue of the change in the date of Petitioner's alleged

assault of S.P., as between the Felony Complaint and the Indictment, and asked that he be

provided with the opportunity to review any paperwork that could "illuminate th[e] distinction"

between the dates contained in each document.  (4/23/07 Tr., at 9.)  In response, the prosecutor

stated to the Court:

> There is no other paper work, your Honor.  I think it will be clear,
> from the nature of the testimony, when the [Petitioner] is
> ultimately placed under arrest, the victim has not even stated when
> the incident took place.  He's under arrest before that.  She doesn't
> remember when it took place.  Originally she thought it was, I
> think you'll hear from the testimony, approximately a month prior
> to the date that she points out the defendant on the street.  Through
> investigation of other witnesses – again, which are not relevant to
> this hearing, it's subsequent to the defendant being placed in
> custody – we were able to narrow that date down significantly to
> the date we believe it happened which was the evening of May 26,
> 2006 into May 27, 2006; but all of that investigation happens
> subsequent to the defendant being placed in custody.

(*Id.*, at 9-10.)

---

[3] This hearing was held pursuant to:  (1) *Mapp v. Ohio*, 367 U.S. 643 (1961), to
determine whether physical evidence sought to be used against Petitioner was obtained illegally;
(2) *Dunaway v. New York*, 442 U.S. 200 (1979), to determine whether there was probable cause
for Petitioner's arrest; and (3) *People v. Huntley*, 15 N.Y.2d 72 (1965), to determine whether any
statements made by Petitioner should be suppressed.

The court denied Petitioner's suppression motion in its entirety, finding that there existed probable cause for Petitioner's arrest, that Petitioner had voluntarily waived his *Miranda* rights, and that Petitioner had consented to the taking of the DNA swabs.  (*See* 4/24/07 Tr., at 28-39.)

    **3.**    **Trial**

        **a.**    **Testimony at Trial**

On October 29 to November 1, 2007, Petitioner's trial was held in the Supreme Court, New York County, before the Honorable Edward McLaughlin, J.S.C.  (*See generally* Trial Tr.) At trial, a number of witnesses testified, as detailed above (*see supra*, at Background Section A), regarding the sexual assaults against W.B., M.L., and S.P, including the three alleged victims themselves, several New York City Police Department officers (Detectives Mark Brown, Julia Collins, and David Rivera, and Police Officers Richard Flaherty, Anthony McNeil, and Rashied Richardson), the two physicians who examined W.B. and M.L. after the assaults (Drs. Joseph Bobrow and Jenny Castillo), a criminalist from the New York City Office of the Medical Examiner (Irene Wong), and the friend whose house S.P. had visited both before and after she was assaulted.  (*See* Trial Tr.)

The defense called Police Officer Carlos Matos as its only direct witness.  (*Id.*, at 440-52.)  On cross-examination of W.B., M.L., and S.P., Petitioner's trial counsel tried to suggest, through his questioning, that each of these claimed victims had actually consented to have sex with Petitioner in exchange for money or drugs, and then falsely reported the incident as rape after Petitioner failed to pay.  (*Id.*, at 98, 133-36, 207-08, 324-25.)  On summation, Petitioner's counsel proffered such a defense – that defendant did not have sex with W.B., M.L., and S.P. forcibly or without their consent, but rather that he tricked them into performing

consensual sexual acts in exchange for money to support their drug habits, despite the fact that

he never intended to pay them.  (*Id*., at 468, 470-73, 482-83.)

### b.     Verdict and Sentencing

On November 1, 2007, the jury returned a verdict of guilty on four counts of Criminal

Sexual Act in the First Degree, three counts of Sexual Abuse in the First Degree, two counts of

Rape in the First Degree, and one count of Attempted Rape in the First Degree.  (*Id*., at 572-73.)[4]

On December 13, 2007, Justice McLaughlin adjudicated Petitioner a persistent violent felony

offender based on a 1996 conviction for Kidnapping in the Second Degree and a 1990 conviction

for Assault in the Second Degree.  (Transcript of Sentencing Proceeding, conducted Dec. 13,

2007, at 1-7.)  The court then sentenced Petitioner to an aggregate term of imprisonment of

75 years to life.  (*Id*., at 8-33.)

### 4.     Direct Appeal

In June 2010, Petitioner, through counsel, filed a direct appeal in the Appellate Division,

First Department.  (*See* Answer, Ex. A (Petitioner's Appellate Brief).)  In his appellate brief,

Petitioner raised two claims:  (1) that the verdict was against the weight of the evidence (*id*.,

at 10-19), and (2) that his sentence was excessive (*id*., at 20-23).  Neither of the claims that

Petitioner raised on direct appeal are presented in his current habeas Petition.

On December 9, 2010, the Appellate Division unanimously affirmed Petitioner's

conviction, finding first that "[t]he verdict was not against the weight of the evidence."

(Answer, Ex. C, at 68 (Decision and Order of the Appellate Division); *see also People v.*

*McKelvey*, 911 N.Y.S.2d 627 (2010).)  In that regard, the court noted that there was "no basis for

---

[4] Justice McLaughlin had previous ruled, pursuant to the agreement of the parties, that he
would not submit the Kidnapping charge against Petitioner to the jury.  (*Id*. at 428-29.)

disturbing the jury's credibility determinations as to each of the three incidents" (*id.*), and that

"[e]ach of the three victims provided credible testimony that established the element of force

beyond a reasonable doubt" (*id.*).  As to Petitioner's sentence, the Appellate Division held that

Petitioner's claim that the trial court abused its discretion in pronouncing his sentence was

unpreserved, and it declined to review that claim in the interest of justice.  (*Id.*, at 68-69.)

By letter dated December 13, 2010, Petitioner sought leave to appeal to the New York

Court of Appeals.  (*See id.*, Ex. D.)  The State opposed the leave application, stating that there

were no questions of law which merited further appellate review. (*See id.*, Ex. E, at 2.)  On

March 3, 2011, the Court of Appeals issued a certificate denying leave to appeal.  *See People v.*

*McKelvey*, 16 N.Y.3d 833 (2011).

### 5.   Section 440.10 Motion to Vacate the Judgment

On September 2, 2011, Petitioner, acting *pro se*, moved to vacate the judgment of

conviction, pursuant to Section 440.10 of the New York Criminal Procedure Law.  (*See* Answer,

Ex. G.)  In that motion, Petitioner argued that:  (1) the trial court lacked jurisdiction because the

Indictment returned by the grand jury charged that the assault against S.P. occurred on a different

date than that originally specified in the Felony Complaint; (2) the prosecutor had committed

misconduct in the grand jury proceedings by introducing perjured and unsworn testimony and

depriving Petitioner of his right to appear; (3) Petitioner's constitutional rights under the Fourth,

Sixth, and 14th Amendments were violated when he was (a) arrested without probable cause,

(b) denied the opportunity to cross-examine the witness whose testimony led to the revision of

the date of the assault against S.P., and (c) denied due process due to prosecutorial misconduct in

the grand jury proceedings; and (4) Petitioner was deprived of effective assistance of counsel,

when his trial counsel failed (a) to object to the change of the date of the assault against S.P.,

11

(b) to inquire as to why colposcopic testing was not performed on the complainants,[5] (c) to

secure the opportunity for Petitioner to appear before the grand jury, (d) to subpoena Petitioner's

cell-phone records for May 26, 2006, and (e) introduce Petitioner's videotaped police statement

into evidence.

The State filed an opposition to Petitioner's Section 440.10 motion, arguing that

Petitioner's claim regarding the amendment of the date of the S.P. assault had not been raised on

appeal, and was therefore procedurally barred pursuant to N.Y.C.P.L. § 440.10(2)(c).[6]  (Answer,

Ex. H, at 2.)  The State further contended that Petitioner's ineffective-assistance-of-counsel

claims were meritless under both federal and state law.  (*Id*., at 4-5 (citing *Strickland v.*

*Washington*, 466 U.S. 668 (1984); *People v. Baldi*, 54 N.Y.2d 137 (1981)).)

On March 13, 2012, the trial court denied Petitioner's Section 440.10 motion in its

entirety.  (Answer, Ex. I.)  The court held that "[t]he difference in the [S.P. assault] dates did not

deprive the Supreme Court of jurisdiction," which was obtained "upon the filing of the

indictment," because "[t]he law does not prevent the prosecutor from presenting evidence to the

grand jury that the crime occurred on a date different from the date alleged in the criminal court

complaint."  (*Id.*, at 2 (citing N.Y.C.P.L. § 10.20(1); *People v. Black*, 705 N.Y.S.2d 696, 698

---

[5] A colposcope is "a gynecological tool that magnifies and photographs where injuries or trauma may be visible," *Gersten v. Senkowski*, 426 F.3d 588, 594 (2d Cir. 2005), and can reveal vaginal abrasions that would be invisible to the naked eye, *see Batchilly v. Nance*, No. 08cv7150 (GBD) (AJP), 2010 WL 1253921, at *39 (S.D.N.Y. Apr. 2, 2010), *report and recommendation adopted*, No. 08cv7150 (GBD) (AJP), 2011 WL 1226260 (S.D.N.Y. Mar. 30, 2011).

[6] The State also argued that Petitioner's claim regarding the sufficiency of the evidence was procedurally barred due to his failure to raise it on appeal.  (Answer, Ex. H, at 2.)  In this regard, the State was apparently referring to Petitioner's prosecutorial misconduct claim, as Petitioner's Section 440.10 motion did not include a challenge to the sufficiency of the evidence leading to his conviction, but Petitioner did state that, due to the alleged introduction of perjured and unsworn testimony before the grand jury, he "[q]uestion[ed] the sufficien[cy] of [the] evidence" presented during that proceeding.  (*Id*, Ex. G.)

(3d Dep't 2000) (holding that grand jury is free to make an independent determination as to whether there is reasonable cause to believe that the defendant committed the crime charged, even if there are defects in the felony complaint, and that a valid indictment supersedes the felony complaint)).)

The trial court further held that Petitioner's claim regarding the prosecutor's subornation of perjured or unsworn testimony before the grand jury was procedurally barred.  (Answer, Ex. I, at 3.)  On this point, the court noted that the Appellate Division had found that Petitioner's conviction was not against the weight of the evidence (*id*.), and that, under state procedural law, Petitioner "could not have raised, on a direct appeal from a judgment of conviction supported by legally sufficient trial evidence, a claim that the indictment was based on false testimony" (*id*. (citing N.Y.C.P.L. § 210.30(6); case citation omitted)).[7]  Accordingly, the trial court found that Petitioner could not raise "that same claim in a postjudgment motion."  (*Id*.)  "In any event," the court stated, "the different dates contained in the criminal court complaint and in the indictment do not provide a factual basis for concluding that the prosecutor suborned perjury at the grand jury."  (*Id*., at 3-4 (citing N.Y.C.P.L. 440.30 (4)(b)).)

In disposing of Petitioner's constitutional claims for violations of his rights under the Fourth Amendment, the Confrontation Clause of the Sixth Amendment, and the Due Process Clause of the 14th Amendment, the trial court found that:  (1) Petitioner was barred from relitigating any claims regarding the legality of his arrest, as such claims could have been raised on appeal, and that, in any event, the police had probable cause to arrest him; (2) the right to

---

[7] Under New York law, where the Appellate Division makes a determination that a verdict was not "against the weight of the evidence" (as it did in this case), the court necessarily also determines that the evidence was not legally "insufficient" to support the verdict. *Parker v. Ercole*, 666 F.3d 830, 833 (2d Cir. 2012).

confront witnesses did not apply in a pretrial proceeding; and (3) Petitioner was not denied due process because any conflict between the dates in the Felony Complaint and the Indictment merely created a factual question to be resolved by the jury.  (*Id.*, at 4-5.)

The court also rejected Petitioner's ineffective-assistance-of-counsel claims, finding that defense counsel would have had no legal basis upon which to challenge the validity of the Indictment (*id.*, at 5 (citing N.Y.C.P.L. § 440.30(4)(a))), that Petitioner's conclusory statement that his counsel failed to facilitate his appearance before the grand jury did not establish a Sixth Amendment violation, and that counsel was not ineffective in failing to inquire of witnesses at trial why colposcopic testing was not performed on the complaining witnesses, as Petitioner provided no support for his contention that such testing would have shown that he did not commit any crime (*id*).  The court further held that counsel was not ineffective in failing to subpoena certain of Petitioner's cell-phone records, as the prosecution had actually subpoenaed those records, only to learn that the records were unavailable because Petitioner's service provider had not preserved them.  (*Id.*, at 5-6.)  Finally, the court noted that Petitioner's exculpatory statements, made on videotape to the police, were "inadmissible self-serving hearsay," and that counsel was therefore not ineffective for not offering the recording into evidence.  (*Id.*, at 6.)

Petitioner sought leave to appeal to the Appellate Division from the trial court's denial of his Section 440.10 motion, attaching a memorandum of law in which he raised each of the issues that were before the trial court.  (*See id.*, Ex. J.)  The State opposed the application (*see id.*, Ex. K), and, by Order dated October 11, 2012, the Appellate Division summarily denied leave to appeal (*see id.*, Ex. L).  Petitioner moved to reargue the denial of leave (*see id*, Ex. M), and, by

14

Order dated February 25, 2013, the Appellate Division denied the motion for reargument (*see id.*, Ex. P).

### 6.      Petition for Writ of Habeas Corpus

On May 14, 2013, Petitioner, acting *pro se*, filed a petition for a writ of habeas corpus. (*See* Pet.) In the Petition, Petitioner argues that his conviction should be reversed on the grounds that:

(1)     The trial court lacked jurisdiction over his case, due to the prosecutor's presentation of evidence to the grand jury that resulted in a variance in the date of the third attack as between the Felony Complaint and the Indictment;

(2)     In the grand jury, the prosecutor (a) suborned perjury, (b) introduced unsworn testimony, and (c) denied Petitioner his right to appear;

(3)     Petitioner's Fourth, Sixth and 14th Amendment rights were violated because (a) his arrest was not supported by probable cause, (b) he was not afforded an opportunity to confront the witness who supplied the changed date of the S.P. assault,[8] and (c) the prosecutor circumvented statutory requirements by presenting evidence to the grand jury indicating that the assault of S.P. took place on a different date than that specified in the Felony Complaint;

(4)     Trial counsel was ineffective in failing (a) to investigate why Petitioner was not permitted to testify in the grand jury and in failing to move to dismiss the indictment on that basis, (b) to question why the date for the third sexual assault differed between the Indictment and the Felony Complaint, (c) to obtain Petitioner's cellular phone records for May 26, 2006, and (d) to question why

---

[8] The basis of Petitioner's Confrontation Clause claim is not entirely clear, but, construing the Petition liberally, Petitioner seems to be contending that he was unable to confront the witness who provided to the grand jury the revised date of the charged crimes against S.P. because Petitioner was not, himself, given the opportunity to appear before the grand jury, and/or because the witness was never called to testify at either the pretrial suppression hearing or trial. (*See* Pet. ¶ 12, GROUND THREE (a).)

the hospital did not perform colposcopic examinations of the
complaining rape victims.

(*See generally id.*)

## DISCUSSION

## I.   APPLICABLE LEGAL STANDARDS

### A.   Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a habeas petition

must be filed within a one-year limitations period beginning on the latest of four dates, usually

"the date on which the judgment became final by the conclusion of direct review or the

expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A); *see also Williams v.

Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001) (judgment becomes "final" for purposes of Section

2244 upon "the completion of direct appellate review in the state court system and either the

completion of certiorari proceedings in the United States Supreme Court, or – if the prisoner

elects not to file a petition for certiorari – [the expiration of] time to seek direct review via

certiorari" (citations omitted)).  Under AEDPA, moreover, "[t]he time during which a properly

filed application for State post-conviction or other collateral review with respect to the pertinent

judgment or claim is pending shall not be counted toward" the one-year limitation period

established by subsection 2244(d).  28 U.S.C. § 2244(d)(2).

### B.   Exhaustion of State Judicial Remedies

As a general matter, a federal court may not consider a petition for a writ of habeas

corpus unless the petitioner has exhausted the remedies available in the state courts.  28 U.S.C.

§ 2254(b)(1)(A); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Picard v. Connor*, 404 U.S.

270, 275 (1971).  To satisfy the exhaustion requirement, a habeas petitioner must have "fairly

presented" his claims to the state courts, thereby affording those courts the "'opportunity to pass

upon and correct' alleged violations of . . . prisoners' federal rights." *Picard*, 404 U.S. at 275

(quoting *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)).  A petitioner may accomplish this

in several ways, including by citing relevant provisions of the federal Constitution in his

appellate brief, *see Davis v. Strack*, 270 F.3d 111, 122-23 (2d Cir. 2001), or by relying on

"pertinent federal cases employing constitutional analysis," *Rustici v. Phillips*, 308 F. App'x 467,

469 (2d Cir. 2009) (internal quotation marks and citation omitted).

 Aside from setting out the federal nature of his claims, the petitioner must also, for

purposes of the exhaustion requirement, present those claims to "the highest court of the

pertinent state." *Larocco v. Senkowski*, 65 F. App'x 740, 742 (2d Cir. 2003); *Bossett v. Walker*,

41 F.3d 825, 828 (2d Cir. 1994) (citation omitted).  In New York, for a claim that can be raised

on direct appeal, a petitioner must first appeal his conviction to the Appellate Division and then

seek "further review of that conviction by applying to the Court of Appeals for a certificate

granting leave to appeal." *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).  A request for

leave to appeal to the Court of Appeals may be made by a letter submission that encloses the

briefs and other documents that were before the lower courts.  *See id*.  A court will deem the

exhaustion requirement satisfied where the "fair import" of the total application suggests a

request for review of the constitutional claims raised in those submissions.  *Id.* at 75-77.

 To exhaust a claim raised before the state trial court in a collateral post-conviction

motion, as in a motion made pursuant to Section 440.10 of the New York Criminal Procedure

Law, the petitioner must seek leave to appeal the denial of the motion.  *See Ture v. Racette*,

No. 9:12-cv-1864-JKS, 2014 WL 2895439, at *4 (N.D.N.Y. June 26, 2014) (claim unexhausted

where petitioner did not seek to appeal denial of Section 440.10 motion); *see also Klein v.*

*Harris*, 667 F.2d 274, 283-84 (2d Cir. 1981); *Ramos v. Walker*, 88 F. Supp. 2d 233, 234 n.3

(S.D.N.Y. 2000) (noting that "[a]n order denying a Section 440.10 [motion] is appealable to the intermediate appellate court by leave of a judge thereof granted under Section 460.15[,] . . . [although] [t]here is no provision in New York law for an appeal to the Court of Appeals from an order denying leave to appeal from an order denying a Section 440.10 motion" (internal citations omitted)).

Despite the exhaustion requirement set out in AEDPA, the statute also provides that the federal court may proceed to deny an unexhausted habeas claim, if it is apparent that the claim is without merit.  28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

### C.    Standard of Review Under AEDPA

If a petitioner's federal constitutional claim has been adjudicated on the merits by the state court, then the federal court must accord substantial deference to the state court's decision under the standard of review dictated by AEDPA.  *See* 28 U.S.C. § 2254(d); *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001) (noting that "adjudicated on the merits" means "a decision finally resolving the parties' claims, with *res judicata* effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground").  The relevant section of AEDPA provides that

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  In addition, under AEDPA, where not manifestly unreasonable, a state

court's factual findings are presumed correct, and can only be overcome by clear and convincing

evidence.  28 U.S.C. § 2254(e)(1).

Under AEDPA, a state court's decision is contrary to clearly established federal law

where the state court either applies a rule that contradicts governing law set forth in Supreme

Court precedent, or "confronts a set of facts that are materially indistinguishable from a

[Supreme Court] decision" and arrives at a different result.  *Williams v. Taylor*, 529 U.S.

362, 405-06 (2000).  An unreasonable application of clearly established federal law occurs when

the state court identifies the correct governing legal principle, but unreasonably applies that

principle to a "set of facts different from those of the case in which the principle was

announced."  *Lockyer v. Andrade*, 538 U.S. 63, 73-76 (2003).  The state court's decision "must

have been more than incorrect or erroneous"; rather, "[t]he state court's application must have

been 'objectively unreasonable.'"  *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (quoting

*Williams*, 529 U.S. at 409).  In order to be entitled to habeas relief, the petitioner must show that

"the state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing law beyond

any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

When this Court proceeds to consider a substantive claim that has not been decided by

the state courts on the merits, this Court must consider the claim under a *de novo* standard of

review.  *See Carvajal v. Artus*, 633 F.3d 95, 111 n.12 (2d Cir. 2011), *cert. denied* 132 S.Ct. 265;

*see also Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007); *Smith v. Fischer*, 957 F. Supp. 2d

418, 434 (S.D.N.Y. 2013).

## II.   __THE PETITION SHOULD BE DISMISSED.__

As a threshold matter, this Court finds that the Petition was timely filed.  On March 3, 2011, the New York Court of Appeals issued a certificate denying Petitioner leave to appeal from the Appellate Division's affirmance of his conviction.  *See McKelvey*, 16 N.Y.3d at 833. Accordingly, Petitioner's conviction became final, and the one-year statute of limitations period began to run, 90 days later, on June 1, 2011, *i.e.*, on the date on which Petitioner's time to seek a writ of certiorari to the United States Supreme Court expired.  *See* 28 U.S.C. § 2244(d)(1)(A); *Saunders v. Senkowski*, 587 F.3d 543, 547 (2d Cir. 2009) ("[T]he limitations period for state prisoners therefore begins to run only after the denial of certiorari or the expiration of time for seeking certiorari." (internal quotation marks and citation omitted)).

The limitations period then ran for 93 days, until September 2, 2011, when Petitioner filed his collateral motion to vacate the conviction.  (*See* Answer, Ex. G.)  That motion was pending until February 25, 2013, when the Appellate Division denied his motion for reargument. *See* 28 U.S.C. § 2244(d)(2); *Smalls v. Smith*, No. 05cv5182 (CS), 2009 WL 2902516, at *8 (S.D.N.Y. Sept. 10, 2009) ("[T]he AEDPA Limitations Period is tolled while a petitioner seeks reargument before the Appellate Division of a denial of leave to appeal a State trial court's denial of a Section 440.10 motion, because such reargument may properly be sought under New York law.").  Petitioner filed the Petition 78 days later, on May 14, 2013.  (*See* Pet.)  As only 171 days of the one-year limitations period had passed before the Petition was filed, its filing was timely. Nevertheless, for the reasons set forth below, I recommend the dismissal of each of Petitioner's habeas claims.

**A.   Plaintiff's Claims Relating to Alleged
Improprieties in the Grand Jury Proceedings**

Several of Petitioner's habeas claims rest, in whole or in part, on challenges to the conduct of the grand jury proceedings that led to his indictment.  For his first claim, Petitioner alleges that, after he presented an alibi for the date shown in the Felony Complaint for the assault of S.P., the prosecutor improperly "changed the date of occur[r]ence . . . at the grand jury presentation," thereby, according to Petitioner, depriving the trial court of jurisdiction to hear the case.  (Pet. ¶ 12, GROUND ONE (a).)  Petitioner's second claim rests squarely on charges of prosecutorial misconduct with respect to the grand jury proceedings; with respect to that claim, Petitioner alleges that the prosecutor permitted "unsworn and prejuried" [sic, perjured] testimony to be heard by the grand jury and then denied Petitioners right to appear, "thus improperly imped[]ing" the grand jury's "investigatory function."  (*Id.*, GROUND TWO (a).)  Although, as noted above, Petitioner's third claim is not entirely clear, it appears that Petitioner is alleging, in part, that he was deprived of his ability to confront a key witness in the grand jury proceedings (*see* n.8, *supra*), and that the prosecutor violated Petitioner's due process rights by "circumvent[ing] the statutory requirements needed to achieve the ability to change the date of occurrence" of the S.P. assault, presumably at the grand-jury level.  (*Id.*, GROUND THREE (a).)  Finally, as part of the ineffective-assistance-of-counsel claim that Petitioner asserts as his fourth ground for habeas relief, Petitioner alleges that his trial counsel "failed to investigate why [Petitioner] was not p[er]mitted to testify at the grand jury . . . and then refused to file the proper paperwork to have the indictment dismissed after [Petitioner's] right was disregarded," and that his counsel was ineffective for failing "to question the change of date of occur[r]ence."  (*Id.*, GROUND FOUR (a).)

Given their common underlying facts, this Court will address Petitioner's grand-jury-related claims first, and then address the portions of his third and fourth stated grounds for relief that constitute his remaining claims.  For the reasons discussed below, none of the claims relating to the grand jury proceedings can withstand scrutiny, either because they rest directly on state law and are not cognizable as federal violations, or because they are without merit.

### 1.   Petitioner's First Two Grounds for Habeas Relief Are Not Cognizable as Federal Claims.

Petitioner's first habeas claim is that the trial court was deprived of jurisdiction over his case due to a variance between the Felony Complaint and the Indictment.  (Pet. ¶ 12, GROUND ONE.)  Specifically, Petitioner appears to contend that the Indictment against him was rendered defective by the grand jury's adoption of May 26, 2006, as the date for the charged crimes involving S.P., rather than June 23, 2006, as stated in the Felony Complaint, and that the trial court's jurisdiction could not have been properly founded on a defective indictment.  (*Id.*) Petitioner does not state any federal, constitutional basis for this claim, and, when he raised the same type of jurisdictional challenge in his Section 440.10 motion, he based his claim on state law.[9]  (*See* Answer, Ex. G, at 9, 13-16.)

Similarly, when Petitioner raised his second habeas claim in his Section 440.10 motion – arguing that the prosecutor engaged in misconduct by (a) suborning perjury and introducing unsworn testimony before the grand jury, and (b) denying Petitioner the right to appear before the grand jury – his arguments again relied on state law, primarily citing those sections of the

---

[9] In the part of his Section 440.10 motion that related to his claim that the Indictment was jurisdictionally defective, Petitioner cited a single federal case, *Sunal v. Large*, 332 U.S. 174 (1947).  (Answer, Ex. G, at 13).  That case dealt with the availability of habeas corpus to defendants who had not appealed their federal convictions, however, and not to the constitutionality of a conviction that relied on an allegedly defective indictment.

New York Criminal Procedure law governing grand jury proceedings and state court decisions construing those statutes.  (*See id*., at 16-19.)[10]  Both in the state courts and here, Petitioner has not identified any federal law or constitutional right upon which this prosecutorial-conduct claim was based.

Violations of state law, however, do not provide a basis for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." (citations omitted).))  Moreover, Petitioner's first two claims do not have viable federal analogs.  Simply put, there is no federal constitutional right to indictment by a grand jury in a state criminal prosecution, *see Alexander v. Louisiana*, 405 U.S. 625, 633 (1972) ("Although the Due Process Clause guarantees petitioner a fair trial, it does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury."); *Fields v. Soloff*, 920 F.2d 1114, 1118 (2d Cir. 1990) ("The Fifth Amendment right to indictment by a grand jury was not incorporated by the Due Process Clause of the Fourteenth Amendment, and, accordingly, does not pertain to the states."), and, as a result, any "[c]laims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court," *Davis v. Mantello*, 42 F. App'x 488, 490 (2d Cir. 2002).

Accordingly, even if stated in federal terms, Petitioner's claim that the trial court was deprived of jurisdiction due to the discrepancy between the Felony Complaint and the evidence

---

[10] In the relevant section of his Section 440.10 motion, Petitioner again cited one federal case, *United States v. Hogan*, 712 F.2d 757 (2d Cir. 1983), which was again inapposite.  That case did not involve allegations of prosecutorial misconduct in a state grand jury proceeding, but rather addressed a federal grand jury proceeding, *see id*., where a defendant is accorded constitutional rights not available in parallel state proceedings, *see, e.g., Castaldi v. Poole*, No. 07-CV-1420 (RRM), 2013 WL 789986, at *6 (E.D.N.Y. Mar. 1, 2013).

presented to the grand jury would provide him with no cognizable basis for habeas relief. *See*

*Cameron v. Cunningham*, No. 13cv5872 (KPF) (GWG), 2014 WL 1259672, at *9 (S.D.N.Y.

Mar. 27, 2014), *report and recommendation adopted*, 2014 WL 4449794 (S.D.N.Y. Sept. 9,

2014) (dismissing petitioner's claim that trial court lacked jurisdiction due to grand jury defects

on the basis that claim did not raise a federal constitutional issue); *Fabre v. Taylor*,

No. 08cv5883 (DLC) (AJP), 2009 WL 162881, at *18 (S.D.N.Y. Jan. 20, 2009), *report and*

*recommendation adopted*, 2009 WL 1457169 (May 26, 2009) ("[Petitioner's claim that the

evidence presented to the grand jury was insufficient to indict him . . . is not cognizable on

habeas review.").

   Similarly, the rule that deficiencies in grand jury proceedings do not violate any federal

constitutional right applies to claims of perjury, *see May v. Warden*, No. 07cv2176 (BSJ)

(GWG), 2010 WL 1904327, at *3 (S.D.N.Y. May 10, 2010), and thus any federal claim that

Petitioner may be trying to assert regarding the prosecutor's alleged subornation of perjury

before the grand jury also cannot be considered in this proceeding.  By logical extension, the

same would be true for any claim that the prosecutor engaged in misconduct by presenting

unsworn testimony to the grand jury.  *See id*.  Petitioner also cannot maintain a federal claim that

he was denied the right to testify before the state grand jury, as "it is well established that

defendants have no [federal] constitutional right to appear before a grand jury."  *Webb v.*

*LaClair*, No. 10cv7603 (PGG) (HBP), 2014 WL 4953559, at *6 (S.D.N.Y. Sept. 30, 2014)

(quoting *United States v. Ruiz*, 894 F.2d 501, 505 (2d Cir. 1990)); *see also King v. Grenier*,

No. 02cv5810 (DLC) (AJP), 2008 WL 4410109, at *47 (S.D.N.Y. Sept. 26, 2008), *report and*

*recommendation adopted*, 2009 WL 2001439 (S.D.N.Y. July 8, 2009), *aff'd*, 453 F. App'x 88

(2d Cir. 2011); *Brown v. Connell*, No. 04cv10152 (PAC) (GWG), 2006 WL 1132053, at \*6 (Apr. 28, 2006), *report and recommendation adopted*, 2006 WL 1880546 (July 5, 2006).

Thus, not only did Petitioner fail to raise and exhaust, in the state courts, any federal variants of his first two habeas claims, but any such claims would have been unfounded.  At bottom, Petitioner's first two claims are solely state-law claims, not cognizable here.

In any event, Petitioner was convicted by the petit jury under the reasonable doubt standard, and, therefore, any claimed error in the grand jury proceedings or in the Indictment was harmless as a matter of law.  *See Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) ("[T]he petit jury's subsequent guilty verdict means  . . . that the defendants . . . are in fact guilty as charged beyond a reasonable doubt.  Measured by the petit jury's verdict, then, any error in the grand jury proceeding . . . was harmless beyond a reasonable doubt." (citing *United States v. Mechanik*, 475 U.S. 66, 70 (1986))); *Campbell v. Lee*, No. 11cv4438 (PKC) (AJP), 2013 WL 5878685, at \*17 (S.D.N.Y. Oct. 11, 2013) ("For federal constitutional purposes, a jury conviction transforms any defect connected with the grand jury's charging decision into harmless error because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt."), *report and recommendation adopted*, No. 11cv4438 (JPO), 2014 WL 6390287 (Nov. 17, 2014).

Accordingly, I recommend that Petitioner's first and second habeas claims be dismissed as non-cognizable.

2.      **Petitioner's Federal Claims Relating to the**
      **Grand Jury Proceedings Are Without Merit.**

Liberally construed,[11] the Petition does raise three federal, constitutional claims relating

to the grand jury proceedings:  (a) a Sixth Amendment claim (raised as part of Petitioner's third

stated ground for habeas relief) alleging that Petitioner was deprived of his right to confront, in

the grand jury proceedings, any witness who supplied the revised date of the assault against S.P.;

(b) a 14th Amendment claim (also raised as part of Petitioner's third ground for relief) that

Petitioner's right to due process was violated when the prosecution allegedly "circumvent[ed] the

statutory requirements" governing the procedure for changing that date from what had been

reflected in the Felony Complaint; and (c) a Sixth Amendment claim (raised as part of

Petitioner's fourth ground for relief) that Petitioner's trial counsel was constitutionally

ineffective for failing to challenge defects in the grand jury proceedings.  None of these claims,

however, have merit.

a.      **Claimed Confrontation Clause Violation**
      **(With Respect to Grand Jury Proceedings)**

As noted above, Petitioner raised a Confrontation Clause claim in his Section 440.10

motion (*see supra*, at Background Section B(5)), but – as is now true with his habeas Petition –

the precise parameters of that claim were unclear.  In particular, Petitioner did not specify in his

Section 440.10 motion whether he was claiming that this Confrontation Clause rights were

violated in the grand jury proceedings, at the pretrial suppression hearing, or at trial.  The trial

court apparently construed the claim to relate to the suppression hearing, as, in dismissing

---

[11] As Petitioner is proceeding *pro se*, his Petition must be afforded a liberal construction. *See Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) ("It is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." (internal quotation marks and citation omitted)).

26

Petitioner's claim, the court ruled only that Petitioner had no right to cross-examination at such a hearing.  (*See* Answer, Ex. I, at 4.)  Thus, the state court did not address whether Petitioner's Confrontation Clause rights could have been violated with respect to the grand jury proceedings, as Petitioner may have been alleging and may be trying to allege here.  Nonetheless, even on this Court's *de novo* review, any Confrontation Clause claim relating to the grand jury would be subject to dismissal for failure to rest on any recognized federal right.

Under the Confrontation Clause of the Sixth Amendment, a criminal defendant has "the right . . . to be confronted with the witnesses against him."  U.S. Const. Amend. VI.  The Supreme Court has held that the Confrontation Clause is violated when an out-of-court declarant's testimonial statement is admitted against a criminal defendant, unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004).  A grand jury proceeding, however, is not an adversarial proceeding, and thus the Confrontation Clause is not applicable in this context. *See United States v. Rodriguez*, 777 F. Supp. 297, 298 (S.D.N.Y. 1991) ("A grand jury proceeding is an *ex parte* investigation, not an adversary hearing." (citing *United States v. Calandra*, 414 U.S. 338, 343-44 (1974)); *People v. Copney*, 969 N.Y.S.2d 898, 900 (Sup. Ct., Kings Cnty. 2013) ("Since grand jury proceedings are not adversary proceedings, the right to confrontation contained in the Sixth Amendment is not implicated as there is no right to cross-examination." (internal citations omitted)); *see also Maryland v. Craig*, 497 U.S. 836, 845 (1990) ("The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.").

Accordingly, any Confrontation Clause claim that Petitioner may be seeking to raise with respect to the grand jury proceedings is meritless and should be dismissed.

### b.    <u>Claimed Due Process Violation</u>

Petitioner also alleges that his rights under the Due Process Clause of the 14th Amendment were violated when the prosecutor, in advising the grand jury of the date on which S.P. was attacked, flouted unspecified "statutory requirements."  (Pet. ¶ 12, GROUND THREE (a).)  Petitioner made this same argument in his Section 440.10 motion (*see* Answer, Ex. G, at 9, 24), and, in denying that motion on the merits, the trial court held that Petitioner "was not denied procedural due process" (*id.*, Ex. I, at 5).  The court further noted that "the indictment provided [Petitioner] with sufficient notice of the date of the charges for the third sexual assault," and that "[a]ny conflict in evidence about the date of that assault created a factual question for the jury to resolve . . . ."  (*Id.*)  Petitioner exhausted his due-process claim by seeking leave to appeal to the Appellate Division (*id.*, Ex. J), and, by its denial of leave (*id.*, Ex. L), the Appellate Division left in place the trial court's decision.  This Court now reviews the trial court's decision under the deferential standard of review set out in AEDPA.

While a state criminal defendant's federal due process rights are violated in the "exceptional case" where the indictment fails to provide the defendant with notice of the crimes for which he is charged, *see Edwards v. Mazzuca,* No. 00cv2290, 2007 WL 2994449, at *5 (S.D.N.Y. Oct. 15, 2007), there is no indication here that Petitioner is actually seeking to challenge the sufficiency of the Indictment on that basis.  More specifically, Petitioner has provided no basis for contesting the finding of the trial court that the Indictment provided adequate notice that he was being charged, in that instrument, with specified crimes that allegedly occurred on specified dates.

28

Petitioner's pleading is vague as to any other basis for his 14th Amendment claim, offering no support for any defined, procedural irregularity that was contrary to statute or could have offended due process.  Further, as discussed above, defects in grand jury proceedings are generally rendered harmless by the petit jury's conviction.  (*See supra*, at Discussion Section II(A)(1); *see also Lopez*, 865 F.2d at 32-33.)  Overall, even liberally construing the Petition, there is no basis for this Court to conclude that the trial court's rejection of Petitioner's due-process claim was contrary to, or represented an unreasonable application of federal law, 28 U.S.C. § 2254(d), and the claim should therefore be dismissed.

### c.   Claimed Ineffective Assistance of Counsel (With Respect to the Grand Jury Proceedings)

Petitioner's fourth ground for habeas relief is that he received ineffective assistance of trial counsel in violation of his Sixth Amendment rights.  Petitioner contends, *inter alia*, that his counsel's performance was constitutionally inadequate because counsel failed to secure Petitioner's right to appear before the grand jury and failed to "question the change of [the] date of occurrence" of the attack on S.P., from the date stated in the Felony Complaint to the date stated in the Indictment.  (Pet. ¶ 12, GROUND FOUR (a).)  Petitioner raised this claim in his Section 440.10 motion, citing to federal law in support of his arguments.  (Answer, Ex. G, at 25-30.)  In denying that motion, the trial court rejected all of Petitioner's ineffective-assistance-of-counsel claims on the merits, finding, in relevant part, that counsel had no legal basis to challenge the validity of the indictment based on the change in the date that the crime was alleged to have occurred, and that Petitioner's conclusory assertion that counsel did not facilitate his appearance before the grand jury did not establish a constitutional violation.  (*Id.*, Ex. I, at 5-6.)  Petitioner exhausted his ineffective-assistance claims by raising them in his application for leave to appeal to the Appellate Division (*id.*, Ex. J), which, as set out above, summarily denied

such leave (*id*., Ex. L).  The trial court's rejection of these claims is reviewed here under

AEDPA.

For AEDPA purposes, *Strickland v. Washington*, 466 U.S. 668 (1984), sets out the

"clearly established federal law" regarding a defendant's constitutional right to the effective

assistance of counsel, *see, e.g., Harrington*, 562 U.S. at 101 (habeas petitioner must establish that

*Strickland* was applied unreasonably by state courts).  To prevail on an ineffective assistance

claim under *Strickland*, a habeas petitioner must generally show that:  (1) his counsel's

performance "fell below an objective standard of reasonableness," and (2) he suffered prejudice

as a result.  *Id*. at 688, 691, 694.  As to the first prong of this test, there is a strong presumption

that counsel's conduct fell within the range of reasonably professional assistance.  *See id*. at 689

("Judicial scrutiny of counsel's performance must be highly deferential," and "a court must

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance.").  With regard to prejudice, the petitioner must demonstrate "a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different."  *Id*. at 694.

Where deference under AEDPA is required, a petitioner "must do more than show that he

would have satisfied *Strickland*'s test if his [ineffective-assistance] claim were being analyzed in

the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court

that, in its independent judgment, the state court applied *Strickland* incorrectly."  *Bell v. Cone*,

535 U.S. 685, 698-99 (2002).  "Rather, [the petitioner] must show that the [state court] applied

*Strickland* to the facts of his case in an objectively unreasonable manner."  *Id*. at 699.  "[T]he

question is not whether counsel's actions were reasonable.  The question is whether there is any

reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

Here, Petitioner is apparently seeking to claim that he had state-law rights with respect to the adequacy of the Indictment against him and the conduct of the grand jury proceedings, and that his trial counsel was ineffective for failing to take action to protect those rights. While "the Sixth Amendment right to the effective assistance of counsel can be violated if counsel failed to raise a significant and obvious state law claim," *LanFranco v. Murray*, 313 F.3d 112, 118-19 (2d Cir. 2002), Petitioner has not shown, in this instance, that his counsel failed to raise meritorious state-law arguments.

As for Petitioner's claim that his trial counsel should have challenged the discrepancy between the Felony Complaint and the Indictment, New York law offers no ground for such a challenge. Rather, the law provides that, while a felony complaint serves as the basis for the commencement of a criminal action, *see* N.Y.C.P.L. § 100.10(5), that instrument is superseded, and thus rendered legally irrelevant for purposes of challenging a subsequent conviction, by the grand jury's decision to indict, *see Brown v. Perlman*, No. 03cv2670 (RJH), 2006 WL 2819654, at *6 (S.D.N.Y. Sept. 29, 2006) ("[T]he grand jury indictment superceded any prior accusatory actions, rendering any alleged pre-indictment deficiencies irrelevant."); *People v. Smith*, 757 N.Y.S.2d 491, 491 (2d Dep't 2003) ("[E]ven if the felony complaint was defective, it was superseded by a valid indictment, rendering any claim regarding a purported defect in the felony complaint academic."). In deciding whether to issue an indictment, the grand jury is free to make an "independent determination that there is legally sufficient evidence that crimes have been committed and reasonable cause to believe that the defendant committed the crimes charged," regardless of what information appears in the initial accusatory instrument. *Black*,

705 N.Y.S.2d at 698 (citing *People v. Wicks*, 76 N.Y.2d 128, 133 (1990)).  Indeed, New York

law does not prohibit the grand jury from returning an indictment even on charges that were not

included in a prior felony complaint.  *See* N.Y.C.P.L. § 190.65(2).

For these reasons, there is no basis under New York law upon which Petitioner's counsel

could have successfully challenged the validity of the Indictment against him due to the

presentation of evidence in the grand jury proceedings that differed from the accusations set out

in the Felony Complaint.  As any argument based on the erroneous premise that the information

presented to a grand jury or included in an indictment must exactly match that contained in a

felony complaint would have been meritless, Petitioner's trial counsel could not have been

ineffective for failing to raise this issue.  *See Forbes v. United States*, 574 F.3d 101, 106 (2d Cir.

2009) ("It is well established that '[t]he failure to include a meritless argument does not fall

outside the wide range of professionally competent assistance to which [a defendant is]

entitled.'" (quoting *Aparicio*, 269 F.3d at 99)).

Petitioner also cannot establish that he is entitled to habeas relief based on the trial

court's rejection of his claim that his counsel was ineffective for failing to secure his state-law

right to appear and testify before the grand jury.  In New York, a criminal defendant does have a

statutorily created right to appear and testify before a grand jury.  *See* N.Y.C.P.L. § 190.50(5);

*see also King*, 2008 WL 4410109, at *47.  Several courts in this Circuit have found, however,

that defense counsel's failure to secure that right does not violate the Sixth Amendment.  *See,*

*e.g., Webb*, 2014 WL 4953559, at *7; *King*, 2008 WL 4410109, at *47; *Acosta v. Couture*,

No. 99cv9727 (LMM) (RLE), 2003 WL 272052, at *8 (S.D.N.Y. June 21, 2002), *report and*

*recommendation adopted*, (Jan. 23, 2003); *see also Davis. v. Mantello*, 42 F. App'x 488, 491 n.1

(2d Cir. 2002) (holding that petition did not assert an ineffective-assistance claim, and noting, in

*dicta*, that the New York courts have consistently held that the failure to ensure that a defendant is able to testify before the grand jury does not amount to ineffective assistance of counsel). Typically, courts have based their holdings in this regard on one of two rationales:  (1) that the United States Supreme Court's holding in *United States v. Mechanik*, 475 U.S. 66, 70 (1986), which states that a defendant's conviction beyond a reasonable doubt cures any defect in an earlier grand jury proceeding, forecloses any possibility of actual prejudice, *see, e.g., Montalvo v. Annetts*, No. 02cv1056 (LAK) (AJP), 2003 WL 22962504, at *24 (S.D.N.Y. Dec. 17, 2003); or (2) that the New York courts have themselves consistently determined that the failure to secure a defendant's right to testify before the grand jury does not constitute ineffective assistance, *see, e.g., King*, 2008 WL 4410109, at *47 (citing *Davis*, 42 F. App'x at 491 n.1).

As has been noted by at least one court in this District, however, there are "inadequac[ies]" with each of these lines of analysis.  *See Washington v. Walsh*, No. 10cv7288 (RJS) (JCF), 2015 WL 4154103, at *26 (S.D.N.Y. Mar. 30, 2011), *report and recommendation adopted*, 2015 WL 4154103 (July 9, 2015).   First, "the New York Court of Appeals has explicitly declined to adopt *Mechanik*, finding that New York law 'provides for dismissal [of an indictment] upon the mere possibility of prejudice' and allows a defendant to raise claims of defects in his grand jury proceedings 'even after a plea of guilty.'"  *Id*. at *26 (quoting *People v. Wilkins*, 68 N.Y.2d 269, 277 n.7 (1986)).  "Thus, while defects in a petitioner's grand jury proceedings are not themselves cognizable on habeas review pursuant to *Mechanik*," that case does not prevent courts from finding "that a trial counsel's failure to raise objections to such defects in state proceedings causes prejudice sufficient to constitute ineffective assistance of counsel under *Strickland*, even when the petitioner has been convicted after a jury trial."  *Id*. Second, the federal standard set out in *Strickland* "operates independently of state constitutional

protections," and the fact that the New York courts have consistently determined that the failure to secure a defendant's right to testify before the grand jury does not violate the right to counsel does not necessarily mean that the appropriate federal standard was reasonably applied in each case. *Id*. Yet, even accepting that it may be possible for a habeas petitioner to establish that he was denied the right to counsel based on his attorney's failure to secure his statutory right to appear before the grand jury, Petitioner alleges no facts demonstrating that the *Strickland* standard was unreasonably applied in this case.

Under *Strickland*, Petitioner can establish a violation of the right to counsel by showing that his counsel failed to raise a significant and obvious state law claim, and that there is a reasonable probability that the outcome of the proceedings would have been different had counsel done so. *See Strickland*, 466 U.S. at 688, 691, 694; *LanFranco*, 313 F.3d at 118-19. Even assuming that counsel's failure to ensure that Petitioner appeared before the grand jury amounted to constitutionally deficient performance, the Petition contains no argument as to how or why Petitioner's presence before the grand jury would have changed the result of those proceedings. Given "the low burden of proof for obtaining an indictment," *Dixon v. McGinnis*, 492 F. Supp. 2d 343, 348 (S.D.N.Y. 2007), this Court is not persuaded that Petitioner's testimony would have outweighed the substantial evidence available to the prosecution at the time of the grand jury, which included DNA evidence, the statements of the three victims, and physical evidence recovered during the search of Petitioner's apartment. (*See supra*, at Background Section A(1-3), B(1).) In this regard, while the petit jury's guilty verdict may not automatically foreclose a finding that Petitioner was prejudiced by his trial counsel's performance, *see Washington*, 2015 WL 4154103, at *26, Petitioner's "subsequent conviction by a petit jury under the reasonable doubt standard makes it highly unlikely he could have

convinced the grand jury of the absence of probable cause," *Santiago v. McGinnis*,

No. 00cv5870 (LBS), 2002 WL 31946709, at *5 (E.D.N.Y. Oct. 21, 2002).

In light of Petitioner's failure to demonstrate that his inability to testify before the grand

jury caused him actual prejudice, this Court certainly cannot conclude that the trial court

unreasonably applied the *Strickland* standard in denying Petitioner's claim.  *See* 28 U.S.C.

§ 2254(d); *Harrington*, 562 U.S. at 105 (noting that review under AEDPA of state court's

application of *Strickland* is "doubly" deferential).  Accordingly, this ineffective-assistance claim

should be dismissed.

### B.    Petitioner's Remaining Claims

Petitioner's remaining habeas claims include (1) a Fourth Amendment claim, alleging

that there was no probable cause for his arrest, and (2) a Confrontation Clause claim which could

be liberally construed to relate to the suppression hearing held in Petitioner's case or to his trial

(both of these claims being raised in Petitioner's third stated grounds for habeas relief), as well

as (3) additional claims of ineffective assistance of counsel (as raised in his fourth stated ground

for relief).  Each of these claims should also be dismissed.

### 1.    Alleged Fourth Amendment Violation

As part of his third stated ground for habeas relief, Petitioner alleges that his arrest

violated the Fourth Amendment because the fact that S.P.'s statement regarding the date of the

assault was later "proven to be fraudulent" vitiated the probable cause for his arrest, which was

based on S.P.'s identification.  (Pet. ¶ 12, GROUND THREE (a).)  Yet, even if Petitioner is

correct that he was arrested without probable cause (which he has not shown),[12] his Fourth

---

[12] Contrary to Plaintiff's argument, the fact that information upon which an officer relied in connection with an arrest later turned out to be false has no bearing on whether there was probable cause for that arrest.  *See Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013)

Amendment claim is procedurally barred and, in any event, does not provide a cognizable basis for federal habeas relief.

Petitioner raised this claim in his Section 440.10 motion, and sought to appeal from the denial of that motion.  (Answer, Ex. G, at 19-20; Ex. J.)  The trial court, however, in the last-reasoned decision of the state courts, rejected it on state-law procedural grounds, holding that Petitioner was barred under N.Y.C.P.L. § 440.10(2)(c) from litigating his challenge to the legality of his arrest in a collateral motion because he could have raised such a claim on direct appeal.  (Answer, Ex. I, at 4.)  Federal habeas review is not available where a claim has been decided by a state court, and the state court's decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment."  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

To determine that the state-law ground on which the state court rested was "truly an *independent* basis for decision" rather than "merely a passing reference, . . . such reliance on state law must be clear from the face of the opinion."  *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000) (emphasis added) (quoting *Coleman,* 501 U.S. at 732 (internal quotation marks omitted)); *see also Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997) (to preclude federal review, "the last state court to render judgment must 'clearly and expressly state[] that its judgment rest[ed] on a state procedural bar'" (alterations in original) (citation omitted)).  To be deemed *adequate*, the state procedural rule on which the court's decision was based must be a rule that is "firmly established and regularly followed" by the state in question, *see Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (internal quotation marks and citation omitted), and must

_____

(holding that, in evaluating probable cause, a court must consider only those facts known to the officer at the time of the arrest).

not have been "misapplied in [the petitioner's] case in particular," *Cotto v. Herbert*, 331 F.3d

217, 240 (2d Cir. 2003) (internal quotation marks and citation omitted).

Here, it is clear from the face of the trial court's opinion that the court relied on the

procedural bar found in N.Y.C.P.L. § 440.10(2)(c) to dispose of Petitioner's Fourth Amendment

claim.  Moreover, the court's decision reflected a regularly followed New York rule that does not

appear to have been misapplied in the circumstances presented, given that Petitioner was

afforded a suppression hearing, the record of which was presumably available for direct appeal.

*See Garcia v. Lee*, No. 10cv5287 (JPO) (JLC), 2012 WL 3822137, at *19 (S.D.N.Y. Aug. 28,

2012) (finding that there is "no question" that § 440.10(2)(c) is firmly established and regularly

followed (citing *People v. Cooks*, 67 N.Y.2d 100, 103-04 (1986))), *report and recommendation*

*adopted*, No. 10cv5287 (JPO), 2014 WL 406209 (Feb. 3, 2014).  Petitioner's Fourth Amendment

claim is therefore procedurally barred from habeas review, and Petitioner has not demonstrated

that he can overcome the procedural bar.[13]

---

[13] A habeas petitioner can overcome a procedural bar to review by showing (1) both "cause" for the procedural default and "prejudice" resulting from the alleged constitutional error, or (2) that the failure to address the claim on habeas would result in a "fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  "Cause" for a procedural default is established when "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule, *Murray v. Carrier,* 477 U.S. 478, 488 (1986), and "prejudice" requires a petitioner to demonstrate that the alleged constitutional error worked to his "*actual* and substantial disadvantage," *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).  To establish a "fundamental miscarriage of justice," the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Carrier,* 477 U.S. at 496.  In this instance, Petitioner has certainly failed to show any probability that this Court's failure to review his claim would result in a fundamental miscarriage of justice, given that he has offered no new evidence of actual innocence.  In addition, Petitioner has not asserted any "cause" for his failure to raise his Fourth Amendment claim on direct appeal.  Nor, based on this Court's analysis of the merits of such a claim (as discussed below), could Petitioner show the requisite "prejudice."  *See, e.g., McDowell v. Heath*, No. 09cv7887 (RO) (MHD), 2013 WL 2896992, at *25 (S.D.N.Y. June 13, 2013) ("Petitioner also cannot establish actual prejudice [as would be necessary to overcome a procedural default] because this . . . claim has no merit.").

In any event, Petitioner's claim would be subject to dismissal under *Stone v. Powell*, 428 U.S. 465 (1976), in which the Supreme Court held that, where a state "has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 494; *see also Briggs v. Phillips*, No. 02cv9340 (SAS) (AJP), 2003 WL 21497514, at *6 (S.D.N.Y. June 30, 2003) ("[Petitioner's] claim that the police lacked probable cause to arrest him is a Fourth Amendment claim that is not cognizable on habeas review."), *report and recommendation adopted*, (July 23, 2003). *Powell* dictates that a state petitioner may obtain federal habeas review of a Fourth Amendment claim only if: (1) the state has provided no corrective procedures to redress Fourth Amendment violations; or (2) the petitioner was precluded from utilizing such corrective procedures by an "unconscionable breakdown in that process." *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977).

In this case, Petitioner does not and cannot contend that the state failed to provide adequate remedial procedures to address his Fourth Amendment claim, as New York provided a procedure for litigating Fourth Amendment claims (a procedure that has been considered and found adequate by the Second Circuit), and Petitioner in fact took advantage of that procedure.[14] (*See* Pretrial Tr., at 2-39; *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure) . . . the claim will never

---

[14] Although the Fourth Amendment claim that Petitioner raised at the *Mapp/Dunaway/Huntley* hearing was based on a slightly different theory than the one he presents in the Petition (*see* 4/24/07 Tr., at 20-28), that hearing offered Petitioner the opportunity to litigate any challenge to the legality of his arrest.

present a valid basis for federal habeas relief."); *Capellan v. Riley*, 975 F.2d 67, 70 n.1 (2d Cir. 1992) ("[T]he federal courts have approved New York's procedure for litigating Fourth Amendment claims . . . as being facially adequate." (internal quotation marks and citation omitted)).)  In addition, the Petition contains no facts suggesting that an unconscionable breakdown in the process by which he was afforded a pretrial suppression hearing denied him a full and fair opportunity to litigate any Fourth Amendment violation.  Thus, even if Petitioner's arrest was unlawful, this fact would not give rise to a cognizable ground for federal habeas relief.

For all these reasons, Petitioner's Fourth Amendment claim should be dismissed.

### 2. Alleged Confrontation Clause Violation (at Pretrial Hearing or at Trial)

Also as part of his third habeas claim, as noted above, Petitioner has arguably claimed that, either at the suppression hearing or at trial, he was denied the right to confront the witness who supposedly provided the new date for the assault against S.P.

To the extent that Petitioner seeks to claim that his right to confront witnesses was violated during the pretrial suppression hearing, his claim is plainly meritless.  The trial court held that "[t]he right to confrontation under *Crawford* . . . does not apply at a pretrial suppression hearing, where guilt is not an issue and hearsay evidence is admissible."  (Answer, Ex. I, at 4 (citations omitted).)  As the U.S. Supreme Court has not held otherwise, the trial court's decision cannot be found to have been either contrary to, or an unreasonable application of federal law, as determined by the Supreme Court.  *See Smith v. Hulihan*, No. 11cv2948 (HB) (AJP), 2011 WL 4058764, at *23 (S.D.N.Y. Sept. 13, 2011) ("The First Department's decision rejecting Smith's confrontation clause claim was not contrary to or an unreasonable application of Supreme Court precedent because the Supreme Court has never applied the Confrontation Clause to a pre-trial suppression hearing."), *report and recommendation adopted*, 2012 WL 4928904 (Oct. 17, 2012).

39

To the extent that Petitioner is contending that his right to confrontation was violated at *trial*, the trial court did not directly address the claim, and thus the deferential AEDPA standard may not apply. Even on *de novo* review, however, any such claim necessarily fails, as Petitioner has not identified any testimonial statement from an out-of-court declarant that was introduced during the trial. *See Williams v. Illinois*, 132 S. Ct. 2221, 2256 (2012) (noting that Confrontation Clause only bars the use of testimonial statements that meet the definition of hearsay). At trial, S.P. and her friend each testified regarding their own recollection of the date that S.P. was assaulted (Trial Tr., at 287, 399-400), and Officer McNeil testified that the different date listed in the Felony Complaint was based on S.P.'s initial recounting of the incident (*id.* at 233-44). Petitioner's counsel had the opportunity to (and, in fact, did) cross-examine each of these witnesses regarding the conflict between S.P.'s initial report and the contrary testimony presented at trial. (Trial Tr., at 233-51, 320-22, 406.) None of these witnesses testified as to statements made by an out-of-court declarant, and neither S.P. nor her friend even implied that their stated recollections of the date of the attack had been affected by information obtained from any third party, not present at trial. Under these circumstances, where no statement of testimonial hearsay was introduced at trial and the defendant had the opportunity to cross-examine the witnesses who testified against him, the Confrontation Clause was not violated.

Accordingly, whether based on the grand jury proceedings (as discussed at Section II(A)(2)(a) above), the suppression hearing, or trial, Petitioner's Confrontation Clause claim should be dismissed.

### 3. Additional Claims of Ineffective Assistance of Counsel

In addition to the ineffective-assistance-of-counsel claims discussed above, Petitioner also alleges, as part of his fourth habeas claim, that his trial counsel was ineffective for failing to

obtain Petitioner's cell phone records from May 26, 2006, the date S.P. was assaulted, and for failing to question certain witnesses as to why colposcopic examinations were not performed on the complaining rape victims.  (Pet. ¶ 12, GROUND FOUR (a).)  Petitioner exhausted these ineffective-assistance claims by raising them in his Section 440.10 motion, and in his application for leave to appeal from the trial court's denial of that application.  (*See* Answer, Ex. G, J.)  The claims were each rejected on the merits by the trial court, which held that counsel could not have obtained Petitioner's cell phone records, as his service provider did not preserve the records for the date in question, and that Petitioner's argument that a colposcopic test would have proved his innocence was unsupported, as medical testimony at trial established that victims of rape often suffer no injuries to their genitals.  (*Id.*, Ex. I, at 5-6.)  Under the applicable AEDPA standard of review, these claims should be dismissed.

### a.      <u>Counsel's Failure To Subpoena Petitioner's Phone Records</u>

Petitioner contends that his trial counsel was ineffective for failing to subpoena his cell-phone records, as, according to Petitioner, these records would have shown that Petitioner was actually in Brooklyn on the night that (according to the Indictment), he was alleged to have assaulted S.P.  (Pet. ¶ 12, GROUND FOUR (a); Answer, Ex. G, at 28.)  In some cases, trial counsel's failure to investigate evidence corroborating an alibi can amount to deficient performance.  *See Espinal v. Bennett*, 588 F. Supp. 2d 388, 399-401 (E.D.N.Y. 2008), *aff'd*, 342 F. App'x 711 (2d Cir. 2009).  Here, however, likely due to S.P.'s expected testimony, as well as the similarity of her allegations to the two other complaints of rape to which Petitioner was linked by DNA evidence, counsel chose not to dispute the fact that Petitioner actually had engaged in sexual acts with S.P., and instead attempted to suggest to the jury that any such conduct was consensual.  Counsel's strategic choice not to assert an alibi defense based on

Petitioner's phone records, and instead to argue that Petitioner had engaged in consensual sexual conduct with S.P., does not constitute deficient performance. *See Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) ("[S]trategic choices made by counsel after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." (quoting *Strickland*, 466 U.S. at 690)); *see also Henry v. Poole*, 409 F.3d 48, 61 (2d Cir. 2005) ("[I]t is generally acknowledged that an attempt to create a false alibi constitutes evidence of the defendant's consciousness of guilt." (internal quotation marks and citations omitted)).

Moreover, even if Petitioner were able to show that his trial counsel's failure to seek out cell-phone records to corroborate Petitioner's alibi defense was objectively unreasonable, this claim would still lack merit due to the apparent unavailability of the records that Petitioner claims his attorney should have subpoenaed. In this regard, the trial court rejected Petitioner's claim on the basis that the *prosecutor* had subpoenaed the relevant records, only to learn that Petitioner's service provider had not preserved them. (Answer, Ex. I, at 6.) Clearly, Petitioner cannot establish that he suffered actual prejudice due to his attorney's failure to subpoena particular records if no such records could have been obtained, and the trial court's finding that Petitioner's counsel was not ineffective for not seeking to procure these records was therefore a reasonable application of *Strickland*.

**b.      Counsel's Failure To Cross-Examine Witnesses
Regarding Lack of Colposcopic Examinations__**

Petitioner also claims that his trial counsel's failure "to question . . . why the one test that would have proven [his innocence] was not performed" amounted to constitutionally deficient performance. (Pet. ¶ 12, GROUND FOUR (a).) In his Section 440.10 motion, Petitioner argued that colposcopic testing would have shown that neither W.B. nor M.L. had suffered any vaginal injuries, and that his counsel unreasonably failed to inquire – presumably during cross-

examination of Drs. Bobrow and Castillo – why such testing had not been performed.  (Answer, Ex. G, at 27-28.)  The trial court, in denying this aspect of Petitioner's motion, held that Petitioner had provided no support for his allegation that colposcopic testing would have shown that he did not sexually assault the victims, and noted that medical testimony had established that rape victims often do not suffer abrasions to their genitals.  (*Id.*, Ex. I, at 5.)  For the following reasons, this holding by the trial court was a reasonable application of the *Strickland* standard.

First, any failure by trial counsel to inquire explicitly as to why a colposcopic examination was not performed does not establish deficient performance.  At trial, Drs. Bobrow and Castillo gave testimony that was seemingly *favorable* to Petitioner, when they stated that their examinations of W.B. and M.L., respectively, revealed no genital injuries.  (Trial Tr., at 155-56, 159, 335-37.)  Petitioner's counsel confirmed on cross-examination that these physicians had detected no injuries (*id.* at 157-60; 337-41), and, when the witnesses then testified that the examinations were made without the aid of a colposcope (*id.*, at 156, 335; *see also id.*, at 159 (Dr. Castillo confirming that her examination of M.L. was not performed with "any other equipment besides just [her] own naked eye")), counsel did not pursue the matter further. Having obtained arguably exculpatory testimony regarding the results of the doctors' visual examinations, the objective reasonableness of counsel's decision in this regard is apparent. While Petitioner claims that cross-examination as to the lack of colposcopic testing would have demonstrated his innocence, he does not explain why this is so, and it seems at least equally likely that the jury would have drawn the opposite inference from such questioning.  In particular, cross-examination on the subject of colposcopic examination may have suggested to the jury that, while examination by the naked eye did not reveal any vaginal tears or abrasions,

the claimed victims may indeed have suffered microscopic injuries that would have been revealed by a colposcope.

Moreover, Petitioner cannot establish, as also required under *Strickland*, that he suffered any prejudice from his counsel's failure to question Drs. Bobrow and Castillo as to why colposcopic examinations were not performed. The jury heard the doctors testify that they did not find evidence that W.B. and M.L. had suffered physical injuries, and, in finding Petitioner guilty beyond a reasonable doubt of raping these complainants, the jury apparently chose to credit the medical testimony that rape victims often show no such injuries. Petitioner offers no plausible argument as to why further cross-examination on the absence of colposcopic testing would have likely altered the jury's verdict. Indeed, in the face of strong evidence of guilt, including the eye-witness testimony of three victims, it seems highly unlikely that the jury would have acquitted Petitioner, had the doctors merely gone on to suggest, during their cross-examination, that colposcopic examinations may have confirmed their visual findings. As Petitioner has not, and cannot, show that he suffered actual prejudice as a result of his trial counsel's failure to inquire as to why the witnesses did not perform colposcopic examinations, there is no basis for this Court to conclude that the trial court's rejection of Petitioner's ineffective-assistance claim was contrary to, or constituted an unreasonable application of, the *Strickland* standard.

Having reviewed all of the alleged deficiencies in the representation provided by Petitioner's trial counsel, both individually and in the aggregate, *see Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001), I recommend that the Court dismiss Petitioner's habeas claims for ineffective assistance of counsel for lack of merit.

44

## CONCLUSION

For all of the foregoing reasons, I recommend that the Petitioner's Petition for a writ of habeas corpus be DISMISSED in its entirety.  Further, I recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), because Petitioner has not "made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail).  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Colleen McMahon, United States Courthouse, 500 Pearl Street, Room 2550, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge McMahon.  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

If Petitioner does not have access to cases cited herein that are reported only on Westlaw, he may request copies from Respondents' counsel. *See* Local Civ. R. 7.2 ("Upon request, counsel shall provide the *pro se* litigant with copies of [cases and other authorities cited therein

that are unpublished or reported exclusively on computerized databases] as are cited in a decision

of the Court and were not previously cited by any party.").

Dated:  New York, New York
        May 23, 2016

                                        Respectfully submitted,


                                        _Debra Freeman_____
                                        DEBRA FREEMAN
                                        United States Magistrate Judge


Copies to:

Hon. Colleen McMahon, U.S.D. J.

Mr. Phillip McKelvey
07A6980
Attica Correctional Facility
Box 149
Attica, NY 14011

Michelle Maerov, Esq.
Assistant Attorney General
State of New York
120 Broadway
New York, NY 10271